IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Tiffany Turner, :
:
               *Plaintiff* :
:
   v. : 2:24-cv-04294
:
Philadelphia FIGHT, :
:
               *Defendant* :

## MEMORANDUM

### I.   Introduction

Plaintiff brings this action under 42 U.S.C. § 1981, alleging that her employment termination by Defendant was motivated by race. Defendant responds that Plaintiff's termination was based on concerns regarding her performance, leadership, and conduct during her tenure. Before this Court is Defendant's Motion for Summary Judgment. Defendant asserts that Plaintiff cannot meet her burden of proving a *prima facie* case, and even if she could, Plaintiff cannot prove that Defendant's legitimate, non-discriminatory reason for termination is pretextual. The Court agrees with Defendant.

Bringing a claim under 42 U.S.C. § 1981 does not give a plaintiff license to rely on gut instinct or *post-hoc* narratives. It demands evidence—actual facts that connect an adverse employment action to racial animus. Plaintiff, Tiffany Turner, offers no such evidence. She claims she was terminated from Defendant, Philadelphia FIGHT, on the basis of her race, but the record tells a different story: she never once raised a complaint of race-based discrimination during her employment; her grievances omitted any reference to race; and her termination came only after

1

repeated concerns about her conduct and divisive management style, all corroborated by numerous witnesses.

## II. Undisputed Factual Background

Plaintiff, Tiffany Turner ("Turner" or "Plaintiff"), was hired as a Director of Nursing ("DON") by Defendant, Philadelphia FIGHT ("FIGHT" or "Defendant") on December 4, 2023. (Dkt. #22-3 at ¶ 37).[1] "FIGHT operates several community health centers, including the Jonathan Lax Treatment Center ("Lax Clinic"), John Bell Health Center ("John Bell Clinic"), YHEP Adolescent and Young Adult Health Center ("YHEP"), and the Pediatric and Adolescent Health Center ("Peds")." (*Id*. at ¶ 2). Turner was hired as the DON for all four health centers and was responsible for supervising nurses and medical assistants at these locations. (Dkt. #22-5, Ex. A at 21:13-22:13). All members of FIGHT's medical leadership team overseeing Turner were white.[2] (Dkt. #22-3 at ¶¶ 8-16, Dkt. #23-2 at 7).

Prior to Turner's employment, she was a Family Nurse Practitioner and had never worked as a DON. (Dkt. #22-3 at ¶¶ 17, 25). At the time of Turner's hire, Dr. Leah Scherzer, Medical Director of YHEP/Peds, testified at her deposition that she did not believe Turner was a good fit for the DON role because, as a nurse practitioner, Turner was trained to see patients, while the DON position is primarily administrative. (*Id*. at ¶¶ 38-40).

On December 7, 2023, the fourth day of Turner's employment, Turner emailed Catrina Peeples, FIGHT's Director of Human Resources, and approached Victoria Nelson, HR Benefits Coordinator, regarding the attendance policy, which she was "hired to, in part, address." (*Id*. at ¶¶

---

[1] Defendant submitted a Statement of Undisputed Material Facts ("SUMF"). Plaintiff's response admitted paragraphs 1 through 219 and disputed only paragraph 220. Accordingly, the Court deems the facts set forth in paragraphs 1 through 219 of Defendant's SUMF as admitted and adopts them for purposes of summary judgment.

[2] For the purposes of her claim, Turner defines "medical leadership" to include only the Chief Medical Officer, Medical Director, and Assistant Medical Director. This excludes the Chief Executive Officer, Chief Operating Officer, and Director of Human Resources, two of whom are Black women.

44-45; Dkt. #23-2 at 8). After these interactions, Ms. Nelson reported that Turner had been "aggressive and demanding" and later described the encounter as a "very unpleasant interaction" that left her "extremely upset." (Dkt. #22-1 at 5).

FIGHT's leadership continued to raise concerns about Turner. Ms. Serafin expressed concerns about Turner's handling of clinic workflows, and Dr. Scherzer testified at her deposition that Turner "wasn't very present during meetings," often had an AirPod in, and did not understand how the clinics operated. (*Id.* at ¶¶ 62-68). Dr. Scherzer also noted that Turner appeared to be multitasking during Teams meetings. (*Id.* at ¶ 69). Turner's behavior also contributed to a negative clinic environment and staff resignations, including a resignation letter from Medical Assistant Desire Medina, who stated that "I have been consistently being [sic] harassed by Tiffany Turner." (*Id.* at ¶¶ 77-79).

In addition to concerns about her conduct, FIGHT leadership also took issue with Turner's inappropriate, unilateral hiring practices. Turner hired India Miller and Sameerah Williams as managers in early 2024 without posting the positions or consulting with leadership. (*Id.* at ¶¶ 80-85). Ms. Miller was initially interviewed for a Medical Assistant role but was elevated by Turner to Medical Assistant Manager, despite lacking prior supervisory experience. (*Id.* at ¶¶ 82-87). Turner based Ms. Miller's salary on that of an employee on medical leave who earned significantly more than other MAs. (*Id.* at ¶¶ 88-89). Following staff concerns, Miller's role was later changed to phlebotomist. (*Id.* at ¶ 90). Turner also hired Ryan Boskie, her former student, as a RN. (*Id.* at ¶ 108). Although Turner received his resume in December, she did not share it with Ms. Serafin until after his start date. (*Id.* at ¶¶ 107, 112). On February 1, 2024, Dr. Hexem, Dr. Scherzer, and Ms. Serafin met with Turner to address concerns that had arisen since her employment. (*Id.* at ¶ 123).

During the meeting, Dr. Hexem informed Turner that Dr. Scherzer, Ms. Serafin, and Ms. Keuch felt that Turner was not experienced enough for the position and disagreed with some of her hiring decisions. (*Id*. at ¶ 125). Turner stated in her Opposition Brief that Ms. Serafin referred to Mr. Boskie, a Black nurse, as "weird, cocky and inexperienced" (*Id*. at ¶ 129), and used the "classic racist argument" that he was "not a good fit".[3] (Dkt. #23-2 at 9). Following this meeting, Dr. Hexem resigned from FIGHT.[4] (Dkt. #22-3 at ¶ 131). Turner further stated in her Opposition Brief that Dr. Hexem's resignation email "cited the hostility Turner had been experiencing from [FIGHT's] leaders as a factor in her decision to resign." (Dkt. #23-2 at 9). However, Dr. Hexem did not reference any race-related concerns in her resignation email. (Dkt. #3).

After Dr. Hexem's resignation, Dr. Kostman was promoted to the position of Chief Medical Officer. (Dkt. #22-3 at ¶ 138). Dr. Kostman raised similar concerns regarding Turner's qualification, unilateral hiring decision, and relationship and work with staff at YHEP/Peds, and he subsequently made the decision to restructure the clinics so that Turner would no longer supervise YHEP/Peds. (*Id*. at ¶¶ 139-150). On February 21, 2024, Dr. Kostman's informed Turner of his decision. (*Id*. at ¶ 151). The next day, Turner sent an email to the entire nursing staff stating that she would no longer be supervising at YHEP/Peds. (*Id*. at ¶ 160). Following Turner's email to the nursing staff, Dr. Scherzer recommended to Kostman that Turner be suspended pending an investigation into several grievances Turner had filed, which the Court will address below. (Dkt. #23-2 at 10). In her Opposition Brief, Turner asserted that Dr. Scherzer demonstrated racial animus by making this recommendation. *Id*.

---

[3]  Turner invites the Court to infer discriminatory bias from Ms. Serafin's comment about Mr. Boskie. However, the Statement of Undisputed Material Facts shows that Mr. Boskie was later promoted to Nurse Manager at the John Bell Health Center, ((Dkt. #22-3 at ¶¶ 121-122), undermining the plausibility of that inference.

[4]  Dr. Hexem ultimately resigned due to difficulties she herself encountered working at FIGHT.

On February 27, 2024, Dr. Kostman had an emergency meeting with the clinical staff to address Turner's email. (Dkt. #22-3 at ¶ 163). During the meeting, Ms. Peeples described Turner's tenure as "a pattern of divisive leadership, misrepresentation, and mistreatment of long-standing staff." (*Id.* at ¶ 170).

Dr. Kostman terminated Turner on April 5, 2024. (Dkt. #22-3 at ¶¶ 192-193). At Dr. Kostman's deposition, he testified that "there was too much disruption to staff and that there was just a negative impact on FIGHT staff and so that's what led to my decision." (*Id.* at ¶ 200). He further testified that Turner was "not a good fit for the position…." (Dkt. #22-5, Ex. G at 27:21-28:3). Since Turner's termination, FIGHT has not filled the DON position. (*Id.* at ¶ 201).

During Turner's tenure with FIGHT, Turner filed four grievances, none of which alleged race-based discrimination. On December 20, 2023, Turner submitted a grievance to Dr. Hexem via email, reporting that anonymous sources had observed three employees smoking marijuana during work hours and that Ms. Peeples was unwilling to investigate this allegation. (Dkt. #22-3 at ¶ 50, Dkt. #1 at 4). Ms. Peeples did not investigate further because the key witness had resigned and did not respond to follow-up from FIGHT leadership. (Dkt. #22-3 at ¶ 58). Turner did not raise any concerns about race-based harassment or discrimination in her grievance. (*Id.* at ¶ 59).

On January 30, 2024, Turner filed a second grievance alleging a hostile work environment caused by other employees. (*Id.* at ¶¶73-75). This grievance also omitted any reference to race. (*Id.* at ¶ 76). On February 5, 2024, she filed a third grievance alleging hostility and obstruction she encountered at FIGHT. (*Id.* at ¶ 134, Dkt. #23-2 at 10) This was the first grievance to mention "discrimination," though it did not reference race. (*Id.* at ¶ 135, Dkt. #23-2 at 10)

The fourth grievance arose from a March 25, 2024 incident in which Shana McKoy submitted an incident report stating she had bumped shoulders with Turner. (Dkt. #22-3 at ¶ 174-175, Dkt. #22-1 at 12). Turner submitted a grievance to Dr. Kostman on the same incident,

5

complaining "experiencing hostile environment." (Dkt. #22-3 at ¶ 175, Dkt. #22-1 at 13). This grievance likewise contained no allegations of racial discrimination. (Dkt. #22-3 at ¶ 176). Ms. Peeples stated that she was unable to substantiate either Turner's or Ms. McKoy's allegations regarding this incident. (*Id*. at ¶ 180). Ms. McKoy resigned on April 4, 2024, stating in her letter that "staff members are leaving due to a negative work environment and mistreatment by the Director of Nursing, Tiffany Turner…." (Dkt. #22-3 at ¶ 190, Dkt. #22-1 at 14). FIGHT hired an outside attorney to investigate Turner's February 5, 2024 and March 25, 2024 grievances, and the attorney concluded that the allegations were unsubstantiated. (Dkt. #23-2 at 10).

### III.   Analysis

#### A. Legal Standard

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Tse v. Ventana Med. Sys., Inc*., 297 F.3d 210, 218 (3d Cir. 2002). This Court "must view the facts in the light most favorable to the non-moving party" and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). After drawing those inferences, the relevant inquiry is "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "Genuine issues of material fact refer to any reasonable disagreement over an outcome-determinative fact." *In re Energy Future Holdings Corp*., 990 F.3d 728, 737 (3d Cir. 2021). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252.

"Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some

6

evidence in the record that creates a genuine issue of material fact." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). "In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." See *id*. (citing *Jersey Cent. Power & Light Co. v. Lacey Twp*., 772 F.2d 1103, 1109–10 (3d Cir. 1985). "Where the movant is the defendant, or the party without the burden on the underlying claim, the movant has no obligation to produce evidence negating its opponent's case." *National State Bank v. Federal Reserve Bank of New York,* 979 F.2d 1579, 1582 (3d Cir. 1992). "The moving party merely has to point to the lack of any evidence supporting the non-movant's claim." *Id*.

### B. Turner Fails to Present Evidence of a *Prima Facie* Case of Race Discrimination Against FIGHT

When there is no direct evidence of discrimination, this Court applies the three-part burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973) to claims brought under § 1981. Under *McDonnell Douglas*'s three-step framework: (1) Turner must first establish a *prima facie* case of discrimination by a preponderance of evidence; (2) if Turner does, the burden shifts to FIGHT to articulate a legitimate, nondiscriminatory reason for Turner's termination; and (3) if FIGHT meets this burden, Turner must be afforded the opportunity to show that FIGHT's stated reason for Turner's termination was a pretext for discrimination. *See Merke v. Lockheed Martin,* 645 F. App'x 120, 123 (3d Cir. 2016). Under this framework, "the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

To establish a *prima facie* case of termination based on race discrimination, Turner is required to show that: "(1) she belongs to a protected class, (2) she is qualified for the position, (3)

she is subject to an adverse employment action, and (4) the circumstances support an inference of discrimination." *Coleman v. Cmty. Behav. Health*, No. CV 21-47, 2022 WL 62918, at *4 (E.D. Pa. Jan. 6, 2022) (McHugh, J.). "The central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race…or national origin." *Evans v. Sch. Dist. of Philadelphia*, No. CV 22-1410, 2022 WL 17652757, at *11 (E.D. Pa. Dec. 13, 2022) (Kearney, J.) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) (cleaned up)).

The first three elements of Turner's *prima facie* case are undisputed: (1) she is African American, and thus a member of a protected class; (2) she is qualified for the position of Director of Nursing; and (3) she suffered an adverse employment action when she was terminated. The element in dispute before this Court is the fourth - whether the record supports an inference of discrimination with respect to Turner's termination. To establish the fourth element, Turner may either: "'(1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action.'" *Drummer v. Hosp. of Univ. of Pennsylvania*, 455 F. Supp. 3d 160, 168 (E.D. Pa. 2020) (*citing Green v. V.I. Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014)).

In the present case, Turner did not introduce any evidence of comparators. While she pointed to various workplace events and dynamics that she believes suggest racial animus, none of the evidence she submitted establishes a causal connection between her race and her termination. Turner's evidence of race discrimination consists solely of her own assertion that he was terminated because she is Black. Because there is no genuine dispute of material fact regarding

8

the circumstances that support an inference of discrimination, Turner's *prima facie* case fails as a matter of law.

Turner cites the following three examples in her attempt to demonstrate an inference of racial animus in her termination. Turner first attempts to suggest a racially hostile environment by noting that the medical leadership at FIGHT—Dr. Kostman, Dr. Scherzer, Dr. Mounzer, Ms. Serafin and Ms. Keuch—was entirely white. (Dkt. #23-2 at 7). However, the racial composition of FIGHT's leadership, standing alone, is "too general to be relevant or useful in establishing a *prima facie* case of discrimination." *Blue v. Def. Logistics Agency*, 181 F. App'x 272, 274 (3d Cir. 2006).

She further contends that she faced "hostility and obstruction from leadership" after implementing an attendance policy, hiring five additional staff members to address a staffing shortage, and seeking to professionalize the workforce. (Dkt. #23-2 at 7-8). To support her proposition, she cites that the Dr. Scherzer, Ms. Serafin and Ms. Keuch questioned her qualifications for the Director of Nursing role based on their perception and objected to her decision to hire Ryan Boskie, a Black male nurse. (*Id*. at 9-10). This argument fails because nothing in the record shows that the alleged hostility toward Turner was based on her race. She tries to tie their objection to her hiring of Ryan Boskie, whom the Ms. Serafin described as "weird, cocky, and inexperienced", to imply racial bias. (*Id*. at 9). However, "one instance of behavior not directed towards the Plaintiff made by a non-decisionmaker should not be given great weight." *Coleman*, 2022 WL 62918 at *5, and neither Dr. Scherzer, Ms. Serafin nor Ms. Keuch was a decisionmaker in Turner's termination.

Furthermore, Turner's assertion that Dr. Scherzer demonstrated racial animus when she recommended to Dr. Kostman, the supervisor of Turner, that she be suspended pending investigation, is also without merit. Absent any indication that race played a role in the

9

recommendation, this claim amounts to mere speculation and does not support an inference of discrimination. *See Merke* at 645 F. App'x 124 (granting summary judgment for § 1981 claim where the African American plaintiff failed to offer any evidence that race influenced his workplace treatment or layoff, relying solely on his subjective belief that the actions were racially motivated); *see also Coleman*, 2022 WL 62918 at *6 (citing *Merke v. Lockheed Martin*, 645 F. App'x 120, 124 (3d Cir. 2016))

While "there is a low bar for establishing a *prima facie* case of employment discrimination," Turner fails to meet even this minimal threshold. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006). Turner's assertions are, at most, vague allegations based on unsupported inferences. Turner fails to identify specific record evidence showing her termination was motivated by discriminatory animus. "The Court is not required to scour the record to support [Turner's] assertions where [she] has failed to cite to specific record evidence." *Araoye v. City of Philadelphia*, No. CV 19-719, 2022 WL 16553374, at *2 (E.D. Pa. Oct. 31, 2022). Accordingly, Turner has failed to meet her burden of establishing an inference of race discrimination with respect to her termination.

While Turner's failure to establish a *prima facie* case alone would warrant summary judgment, this Court will nonetheless proceed to the remaining steps of the *McDonnell Douglas* framework. Turner relies on the same evidence she cited in support of her *prima facie* case to argue that FIGHT's stated reasons for her termination were pretextual. However, her case suffers at this stage as well.

### C. FIGHT Articulates a Legitimate, Nondiscriminatory Reason for Turner's Termination, and Turner Fails to Show Pretext

Even if Turner had established a *prima facie* case of discrimination, she still fails to carry her ultimate burden of showing that FIGHT's stated reason for her termination was pretextual. Under the *McDonnell Douglas* framework, once the defendant articulates a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to show that the reason was merely a pretext for discrimination. 411 U.S. at 802. FIGHT "introduc[ed] evidence, which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable action." *Branch v. Temple Univ.*, 554 F. Supp. 3d 642, 649 (E.D. Pa. 2021) (Kenney, J.) (cleaned up). FIGHT asserts that Turner was terminated based on legitimate concerns regarding her suitability for the Director of Nursing position during her four-month tenure. (Dkt. #22-1 at 1). Specifically, FIGHT cites Turner's unilateral hiring decisions, multiple reported conflicts with other employees at YHEP/Peds, and its assessment that she lacked the qualifications necessary for a management role. *Id*. FIGHT encapsulates these issues as creating "a pattern of divisive leadership, misrepresentation, and mistreatment of long-standing staff." (Dkt. #22-3 at ¶ 169, Dkt. #22-1 at 25).

Therefore, the burden shifts back to Turner to show that "by a preponderance of evidence, that [FIGHT's] legitimate, nondiscriminatory reasons were not its true reasons, but were a pretext for discrimination." *Branch*, 554 F. Supp. 3d at 652. (cleaned up). To do this, Turner "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. In other words, Turner must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

11

proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id* (cleaned up). "Plaintiffs must provide evidence beyond their own subjective belief of discrimination to show pretext for racial discrimination." *Branch*, 554 F. Supp. 3d at 652.

Turner relies on the same evidence used to support her *prima facie* case to argue pretext. She contends that she was simply performing the job she was hired to do and, in doing so, encountered "hostility and obstruction" from the leadership and other staff. (Dkt. #23-2 at 8-9). In support of this statement, she points to Dr. Hexem's resignation email, which references the hostility Turner faced. (*Id*. at 9). She argued that the leadership's objection to her lack of qualification for a management-level role is unfounded and solely based on their own perception. She also cites what she characterizes as a "classic racist argument" by Ms. Serafin, who described both Turner and Boskie, a Black nurse she hired, as "not a good fit." (*Id*. at 9-10).

Turner's assertions are insufficient to prove pretext. At bottom, her argument invites this Court to second-guess FIGHT's business judgment in terminating an employee whom they deemed to be unfit for the position. "The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." *Keller v. Orix Credit All., Inc*., 130 F.3d 1101, 1109 (3d Cir. 1997) (citation omitted). Turner must do something more than show FIGHT is "wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether [it] is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765.

The objections Turner faced regarding her managerial decisions arose from the leadership's legitimate concerns about workplace disruption, as corroborated by multiple employees' statements: Ms. Nelson described Turner's behavior as "aggressive and demanding" and later described their encounter as a "very unpleasant interaction" that left her "extremely upset." (Dkt.

#22-1 at 5); Desire Medina cited "[consistent]...harassment" in her resignation letter, (Dkt. #22-3 at ¶ 77-79), and Shana McKoy reported that Turner created "a negative work environment" (Dkt. #22-1 at 14). Turner, in her Opposition Brief, conceded that leadership's primary objection was her failure to consult them before making decisions: an internal procedural issue that further undercuts any inference of discriminatory animus. (Dkt #23-2 at 8-9). Additionally, her claim that leadership misjudged her qualifications does not support pretext. It is well-settled that "[i]t is the manager's perception of an employee's performance that is relevant, not a plaintiff's (or another employee's) subjective evaluation of their job performance." *Moye v. Verland Found.*, No. 2:21-CV-646, 2022 WL 3700665, at *6 (W.D. Pa. July 26, 2022).

Some courts have recognized that "not a good fit" can occasionally mask discriminatory motives; however, there is no evidence of discriminatory motives in this matter. Turner offers no evidence suggesting the phrase was used as a proxy for race. In contrast, the record reflects that concerns about "fit" were rooted in specific, non-discriminatory critiques of her leadership style and management skills. As the Court found in *Palma v. Volunteers of America,* similar reasons such as: "lack of interpersonal skills, inability to build teams, and communication style" were sufficient to justify termination and consistent with an employee simply not being a "good fit." No. CIV.A. 04-919, 2006 WL 328352, at *5 (E.D. Pa. Feb. 9, 2006) (cleaned up).

Besides Turner's own conclusory and self-serving assertions, she has failed to present actual evidence from which a reasonable factfinder could conclude that FIGHT's legitimate, nondiscriminatory reason for her termination was pretextual. Thus, the Court holds that FIGHT is entitled to judgment as a matter of law.

## IV.  Conclusion

Turner fails to establish a *prima facie* case of racial discrimination under 42 U.S.C. §1981 and fails even more in proving FIGHT's legitimate nondiscriminatory reason for termination is a pretext. Accordingly, Defendant's Motion for Summary Judgment is granted as reasons set forth above.


Dated: July 28, 2025                                BY THE COURT:

                                                    /s/ Gail Weilheimer
                                                    _____
                                                    GAIL WEILHEIMER          J.